<pre>
 1              IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF VIRGINIA
 2                     Richmond Division

 3

 4

 5

 6   THE UNITED STATES OF AMERICA,

 7                                         Plaintiff,

 8        versus                              3:17CR49

 9   PATRICK FALTE,

10                                         Defendant

11

12

13

14        Before:  HONORABLE JOHN A. GIBNEY, JR.
                  United's States District Judge
15

16

17

18

19                   September 15, 2017

20                   Richmond, Virginia

21

22

23                   GILBERT F. HALASZ
                  Official Court Reporter
24                   U. S. Courthouse
                  701 East Broad Street
25                   Richmond, VA 23219
</pre>

1

2

3                     APPEARANCES

4

5              Jessica Aber, Esq.
               Elham Peirson, Esq.
6        Assistant United States Attorney
               For the United States
7

8

9              Carolyn Grady, Esq.
           Assistant Public Defender
10             for the defendant

11               The Defendant
         In his/her own proper person
12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          THE CLERK:  Case number 3:17 CR 49.

2          United States versus Patrick Falte.

3          Ms Jessica Aber and Ms Elham Peirson represent the

4  United States.

5          Ms Carolyn Grady represents the defendant.

6          Are counsel ready to proceed?

7          MS ABER:  United is ready.

8          MS GRADY:  Defense is ready.

9          THE COURT:  All right.

10         Good morning to Ms Peirson and Ms Aber and Ms Grady

11  and Mr. Falte.

12         Is it Falte or Falte?

13         THE DEFENDANT:  Falte.

14         THE COURT:  Falte.  All right.  Well, good morning,

15  sir.

16         All right.  Ms Grady, have you and Mr. Falte had a

17  chance to review the presentence report and to discuss it?

18         MS GRADY:  Yes, we have, Judge.

19         THE COURT:  And do you have any unresolved objections

20  to the report?

21         MS GRADY:  No, we do not.

22         THE COURT:  All right.

23         And the government have any objections?

24         MS ABER:  No, Your Honor.

25         THE COURT:  All right.

1       So here is how the presentence report works out with

2   the guidelines.

3       The base offense level is 42 points, which is

4   computed as follows:  Thirty-two points for the basic

5   offense, plus four four because the victim was under 12

6   years old, plus two because there was sexual contact, plus

7   two because there was distribution of the photographs or

8   images, plus two because a computer was used.

9       All right.  That is 42.

10      Then there is a five-point enhancement, which really

11  is impossible to explain in words, but it is due to the

12  nature of the crime in this case, and under the

13  guidelines, leading to a total adjusted offense level of

14  47.  Mr. Falte gets three points off for acceptance of

15  responsibility.  I will grant the government's motion to

16  take off the third point.  For a total offense level of --

17  well, it would be 44, but the maximum is 43, so it is 43.

18      He has zero criminal history points, and category

19  one.  Guideline sentencing range is therefore life.  The

20  guidelines, of course, are advisory only.

21      I have received some letters in this case.  Received

22  this morning a letter from Mr. Falte himself, which

23  expresses his regret over the offense and the fact that he

24  understands how he harmed the child in this case.

25      I have got a letter from Janet Falte.

1        Ms Grady, is that his grandmother or great

2   grandmother?

3        MS GRADY:  It is his father's ex-stepmother.  His

4   father's new wife, after his father's mother died.  Or

5   father's wife.

6        THE COURT:  So it is his step grandmother then?

7        MS GRADY:  Essentially, yes.

8        THE COURT:  Anyhow, from his grandmother, Janet

9   Falte.

10       From his mother and his father.  From his sisters, or

11  sister, rather, his -- essentially those letters from

12  family members discuss the fact that he is kind and

13  helpful to others.  And that they still love him.  And

14  reiterates some of the issues that he has had in his life

15  in terms of depression and difficulties dealing with that

16  in school and so forth.

17       I also have a letter from his doctor at Vanderbilt

18  dealing with his Crohn's disease, which is obviously real

19  and requires continued treatment.

20       I also have received statements from the mother and

21  grandmother of the victim in this case, the child.  And

22  those letters discuss the horrible effect of Mr. Falte's

23  and Mr. Faulkner's actions on the child, which I don't

24  think means -- Mr. Falte doesn't deny that.

25       Okay.  Let's see.  Do you have any witnesses?

```
1       MS ABER:  No, Your Honor.

2       THE COURT:  Okay.

3       Do you have any witnesses?

4       MS GRADY:  I just have one, Your Honor.

5       THE COURT:  All right.

6       Let's hear the witness.

7       MS GRADY:  Charles Falte, please.

8                   CHARLES FALTE

9            WAS SWORN AND TESTIFIED AS FOLLOWS:

10                  DIRECT EXAMINATION

11   BY MS GRADY:

12       THE COURT:  All right.

13       Good morning, Mr. Falte.  Thank you for coming, sir.

14   Q   Please introduce yourself to The Court.

15   A   Charles Falte.  I am Patrick's father.

16   Q   You go by?

17   A   Pete.

18   Q   Pete.  Did you write a letter in this case?

19   A   I did, yes.

20   Q   Okay.  And you are, obviously, you call him Patrick.

21   What is his nickname?

22   A   Ding.

23   Q   Ding.  You obviously traveled from somewhere today.

24   Where did you come from?

25   A   Nashville, Tennessee.  Franklin.  Just south of
```

1    Nashville.

2    Q    Who else came with you?

3    A    My wife, Patricia.

4    Q    What about your daughter, Christa?

5    A    Due to work, she had to remain where she is at in

6    Nashville.

7    Q    Okay.  Did she want to come today?

8    A    She -- it is tough for her.  She works in child care.

9    So it is hard for her to be here, but she still loves her

10   brother.

11   Q    Okay.

12        Why did you come here today?

13   A    To support my son and help in any way with his

14   sentencing, kind of show the positive side that we have

15   seen in our son.  We have not seen this portion of him.

16   Q    Tell The Court a little bit about the positive sides

17   of your son.

18   A    We know him to be loving and helpful.  He has always,

19   you know, been more of an introvert.  We have known that.

20   But we have known the loving side.  He has been very

21   helpful to neighbors, ourselves, we go to Second Harvest

22   Food Bank once every year or two to, you know, community

23   volunteer service.  Things of that nature.

24   Q    You all are involved in the church, are you not?

25   A    We are involved, yes.

Falte - direct                                    8

1    Q     Okay.

2          What are you asking The Court to do for your son?

3    Obviously, he has to sentence him.

4    A     I understand the pain that is going on from the other

5    side.  And, you know, that is where I would be if I were

6    in their position.

7          I just hope today is not about vengeance or anything

8    like that.  It is the legal system, and I hope they see

9    that my son is worthy of a second opportunity at some

10   point in his life.

11   Q     Okay.  Thank you.

12         Answer -- anything else you want to tell The Judge

13   today that you didn't write in the letter?

14   A     No.  That is it.

15         THE COURT:  All right.

16         MS GRADY:  Answer any questions the Judge or

17   government has.

18         MS ABER:  No questions, Your Honor.

19         THE COURT:  Mr. Falte, thank you very much for

20   coming.

21                    (Witness stood aside)

22         Let me say to -- you can go back in the audience.

23         Did you identify the Falte family members who are

24   here?

25         MS GRADY:  Yes, sir, Judge.  I apologize.

1        The woman who stands up, that his mother, Patricia

2    Falte.  And next to them are the Faulkners, who traveled

3    from Canada today.

4        THE COURT:  All right.

5        Well, thank you both for coming, to the Faltes.

6        MS GRADY:  Defense has no further witnesses, Your

7    Honor.

8        THE COURT:  Okay.

9        Any other evidence from either side?

10       MS ABER:  No, Your Honor.

11       MS GRADY:  Nothing from defense.

12       THE COURT:  Let me say to the Faltes, thank you.

13   This is, obviously, not a good day in your life, or in

14   Ding's life.  But thank you very much for coming.  It

15   means a lot to him to have you here.  So thank you for

16   coming.

17       All right.  So let's hear from the government then on

18   the request for variance, the 3553(a) factors, and the

19   appropriate sentence in this case.

20       Why don't you tell me who is here from the family of

21   the victim, or supporting the victim.

22       MS ABER:  Yes, Your Honor.  The two individuals in

23   the second row next to Mrs. Ulmet are relatives of

24   Mr. Faulkner.  Other than that, we have investigative

25   agent and other folks here to observe.

1          THE COURT:  Okay.

2          So the mother and the grandmother are not here?

3          MS ABER:  That's correct, Your Honor.

4          THE COURT:  Okay.

5          MS ABER:  They didn't want to be here at the end

6     because this is such a --

7          THE COURT:  I understand.

8          MS ABER:  Okay.

9          So for the reasons outlined in our sentencing

10    position, and in our sealed pleadings, a sentence of 50

11    years, which is just short of life imprisonment for a

12    27-year-old here, that meets the factors of 18 USC 3553

13    (a).  The variant sentence of 30 years, as Mr. Falte

14    proposes is insufficient to achieve the objectives of the

15    statute.  And I don't mean to be beat a dead horse, Your

16    Honor, but against the defendant's regret, which is

17    apparent in his letter, and his family, the horrible

18    situation this is, the obvious good side of Mr. Falte, we

19    have the nature and circumstances of this offense, which

20    is truly horrific.

21          Traveling repeatedly across state lines to rape a

22    toddler is unconscionable, but they also -- when I say

23    "they" I mean both Mr. Falte and Mr. Faulkner -- spent

24    time in this district grooming this child.  And, in fact,

25    Mr. Falte's letter alludes to that, buying the child toys,

1    buying her ice cream to make her comfortable.  And they

2    photographed the abuse.  I have seen those pictures and

3    videos, and it is horrific.  And they put those on the web

4    site for other pedophiles to watch.  In honest, truth,

5    Your Honor, those photos will exist in perpetuity on the

6    internet for other pedophiles to watch.  That kind of

7    thought is really, I think what probably is the nub of how

8    offensive this is to the mother and grandmother, setting

9    aside the physical pain that their daughter and grand

10   daughter endured.  And I won't read it, obviously, but the

11   mother has a very interesting statement at the end of her

12   victim impact statement about how she is had images in her

13   head of what I was told you, Mr. Falte, and your friend,

14   did to her fragile little body.  As her mother my heart

15   breaks.  The evil you brought into my child's life is in

16   indescribable.  That is why she asks this court to

17   sentence Mr. Falte to life imprisonment.

18        A thirty year sentence does not, does not serve the

19   remaining factors of 3553(a).  It doesn't reflect the

20   seriousness of the offense.  It doesn't promote respect

21   for the law or promote just punishment.  The cruel

22   physical abuse of the youngest and most vulnerable is a

23   among the most serious crimes in the United States Code.

24   And that, Your Honor, is why thirty years is the mandatory

25   minimum, and the guidelines are life.

1       In fact, upon preparing for this sentencing yesterday

2   I was thinking about if I polled a hundred people on Broad

3   Street I am guessing the vast majority would say life

4   imprisonment, or even worse, would be an appropriate

5   sentence for this crime.

6       A thirty year sentence is not about vengeance, it is

7   about -- excuse me, fifty year sentence is not about

8   vengeance, a thirty year sentence will not adequately

9   protect the public from further crimes of the defendant.

10       Ms Grady has provided a very interesting

11   psychological report to The Court.

12       THE COURT:  I have read it.

13       MS ABER:  And having prosecuted many child

14   pornography cases, I am interested in what a psychologist

15   would say about someone like Mr. Falte who has these kinds

16   of clear proclivities towards this activity.  But at the

17   heart of the psychologist's opinion is that Mr. Falte at

18   best would be most similar to individuals who are average

19   risk of re-offense upon release.  So even assuming that is

20   true, and even assuming Mr. Falte is amenable to the sort

21   of sex offender treatment the psychologist proposes, it

22   strikes me as an unacceptable risk to the community.

23       THE COURT:  I think what she says is that a very low

24   risk of reoffending, and among the potentially offenders

25   he is sort of in the middle rank.  So, it is not like it

1   is a high risk, but virtually any risk is unacceptable.

2      MS ABER:  Exactly.  I mean who wants their child to

3   be the part of the low risk of recidivism?  In fact, that

4   is borne out by Mr. Falte's communications that are listed

5   in the PSR with another pedophile reflecting that he might

6   like to go out and spot kids or adopt or foster children.

7   I mean that kind of risk is not someone we can release in

8   their late or early 50s, which is what Mr. Falte proposes.

9   30 year sentence would have him released at approximately

10   53, with good behavior.  But a 50 year sentence assumed

11   that he will be released at almost 70 years old.  And with

12   inevitable sex offender monitoring, supervised release, he

13   would presumably provide -- would provide sufficient

14   assurance that he will not harm another child.

15      THE COURT:  Well, I can assure you that as people

16   approach their 70s they still have active sexual lives and

17   desires and so forth.

18      MS ABER:  I'm not going to comment on that, Your

19   Honor.  But I will add that I think at that point in his

20   life there are sufficient ways, and who knows what sex

21   offender monitoring would be like in the year 2087.

22      THE COURT:  It would be a different world then.  You

23   know, one of the things that just troubles me about this

24   case is that right now the world of treatment for people

25   like Mr. Falte is pretty primitive.  But who knows what it

1    is going to be in 30 years or so.  Maybe there will be

2    something that will help him in dramatically different

3    ways than what we have now.  But there is no guarantee of

4    that, is there?  Not even, doesn't even seem to be a lot

5    of work going on in that area.  But, go ahead.

6        MS ABER:  Well, the bottom line is, Your Honor, I

7    think we have to sentence Mr. Falte on the information we

8    have now before us.  That is, that he is a public safety

9    risk, that we need to incapacitate him as long as

10   possible.  But based on the information provided in our

11   sealed pleadings he does deserve some hope of ultimate

12   release.  That is why a 50 year sentence is most

13   appropriate an meets the factors of 3553(a.

14       Thank you.

15       THE COURT:  Thank you very much.

16       Ms Grady.

17       MS GRADY:  Good morning, Your Honor.

18       THE COURT:  Good morning.

19       MS GRADY:  Some of the direct responses to The

20   Court's concerns and the government's arguments for me

21   would be that The Court is obviously concerned about one

22   of the factors, which is how to protect society.  And

23   talking about Mr. Falte's being a low risk or an average

24   person in the low risk category, which is what the

25   evaluation turns out to be, to opine, Judge, in 30 years,

1   as you well realize, we don't know what the world is going

2   to be like.  What we do know from the evaluation is that

3   Mr. Falte is amenable to treatment.  The doctor found a

4   number of factors that showed that Mr. Falte is amenable

5   to treatment.  He is sorry and feels horrible for his

6   actions.  He has felt horrible for his thoughts and

7   attractions since a young age.  He has had major

8   depression that has really never been treated.  He has a

9   mental disorder.  I mean this is DSM five disorder,

10  pedophilia.  It is mental disorder that he has suffered,

11  and in combination of the major depression, neither of

12  which he has ever received any kind of counseling for.

13      So I think that there is a great deal of hope in the

14  future, in 20 years, 30 years.  There has to be.  Society

15  has got to figure out a way to be able to treat these

16  folks.  And be able to let those out who have the ability

17  to show that they can have those attractions and not act

18  on them.

19      There are many folks who have those attractions and

20  are appropriately controlled by supervision.

21      You know, Ms Aber's argument assumes that in 30 years

22  he would just be out on the street.  He is going to have

23  so many controls on his life that will provide further

24  punishment for what is going on with him he.  Will not

25  have an access to the internet, I can't imagine, whatever

1   it will look like.

2       THE COURT:  Well, that is if we think that medicine

3   is going to change in between now and then.  God knows

4   what will happen to the internet.  It may not even exist.

5   It might be something different.

6       MS GRADY:  That' is true, but the point is, that I

7   think he will be adequately controlled.  I think the

8   risks, that the evaluation and the combination of what we

9   know in reality, I think the risk will be minimized.  I

10  don't think that an additional 20 years suggests

11  warehousing him put him away is really the right thing to

12  do in this case.

13      Your Honor well knows that you have to impose a

14  sentence that is sufficient but not greater than

15  necessary.  When you look at -- I have never seen the life

16  sentence study that was done by the Sentencing Guidelines.

17      What I found to be most interesting is that they

18  consider, the Sentencing Guidelines folks, United States

19  Sentencing Commission, believes that of the -- a de facto

20  life sentence is 39 point one years.  Let's round it up to

21  40.  That is what they say is a life sentence.  If the --

22  de facto meaning, essentially it is a life sentence.  And

23  there are a number of folks, not a great deal, but a small

24  number of folks who are serving that kind of sentence.  If

25  the government is genuine in its request he receive

1    something less than a life sentence, I think Your Honor

2    need to think about a sentence between 30 and 40 years

3    because a de facto life sentence is 39 point one years.

4         He should be commended --

5         THE COURT:  Well, not a de facto life sentence for

6    him.  What is, he 26?

7         MS GRADY:  Right, but --

8         THE COURT:  He is going to live to be more than 66 if

9    he lives out -- you take a look at the actuarial tables in

10   the Virginia code --

11        MS GRADY:  I don't know --

12        THE COURT:  -- it is 80 something.

13        MS GRADY:  For a person living in society.  I'm not

14   sure that is a person living in a high-risk community.  In

15   a high-risk community for not only his Crohn's disease.

16   If that goes bad in any form or fashion Mr. Falte will be

17   in serious trouble if not dead.  The Bureau of Prisons has

18   proven itself to be wholly inadequate medical facility to

19   treat the, to timely treat serious conditions.  But they

20   can treat diabetes, or give insulin.  Do things like that.

21   Even give dialysis.  But for somebody who will need at

22   some point immediate medical care for Crohn's, which is

23   painful, you know, the likelihood that this will erupt in

24   a highly stressful situation is great.  So not only we

25   have to consider what his life would be with Crohn's and

1   how successful that is, but the evaluation indicated that

2   he would be more particularly vulnerable because he is a

3   minority, and he has the problems that he is a sex

4   offender.  He is a sex offender that is not a strapping

5   six-foot, 250 pounds.  He is skinny.  He is not going to

6   be able to defend himself.  He is somebody that will

7   surely be a victim.  So I don't think how long he is going

8   to live, but I think certainly a realistic sentence would

9   be something in the area of 30 to 40 years, because that,

10   I think, is what would be a de facto to life for him.  It

11   would be a life sentence for him.

12       THE COURT:  Okay.

13       MS GRADY:  The reason I have asked for 30 years is

14   that I think that The Court needs to consider the other

15   factors.  Obviously there is protect society.  There is

16   sufficient punishment.  And, you know, he did what he

17   needed to do after his arrest.  He confessed.  He pled to

18   this charge.  He willingly waited and waived a number of

19   speedy trial rights to figure out the right kind of

20   charge, the government.  And we were working on that.  He

21   did what he needed to do, some of the things mentioned in

22   the supplemental government's sentencing position that was

23   of great value.  And the government recognizes that.  So I

24   think The Court can recognize that, too, and place your

25   own value on what he did.

1          In terms of what he did for, in comparison to the

2     other folks, he is not a Mr. Hicks who served up his

3     daughter.  He is not Mr. Faulkner, who apparently has

4     other touching offenses.  He is somebody that should be

5     treated differently than the other two individuals in this

6     case, and that is why I think we could start at the

7     mandatory minimum.

8          Obviously, Congress found that to be a serious

9     sentence.  When I wrote in the, my position paper about

10    which offenses deserved, or by the guidelines, said

11    mandatory life, this is not one of them.  Congress made

12    specific determinations on what should receive a life

13    sentence, and this is not one of them.

14         Judge, his parents came here.  It is obvious from

15    their letters, and obviously from the letter from the

16    sister, they were very surprised at what was going on in

17    his life.  They had no idea.  To think that that stems

18    from Mr. Falte's isolation that he felt as a child.  He

19    wanted to die and wanted to die at age eight.  I think

20    that is depression.  But then you get to when he tries to

21    kill himself at 18 or 19 because he felt guilty about the

22    thoughts that he had in his head.  This is not somebody

23    who gleefully walks down the street and happily, you know,

24    offends children.  He is somebody with a mental disorder

25    and is unhappy, has always been unhappy with his thoughts.

1   So I think The Court needs to take that into consideration

2   as well.

3        The interesting thing that is, noteworthy thing, I

4   suppose, is that he suffered his own trauma and he is here

5   today not blaming that trauma on turning his life around

6   and making him want to do something horrible to children.

7   In fact, his family didn't know about it until today.  He

8   kept that secret for that long.

9        I spoke to the parents about it before court.  So I

10  think he is somebody who has taken responsibility and who

11  willingly wants help for what he has, which society has

12  never offered a cure.  He is somebody that joined the peer

13  support group to try to deal with his feelings.  Nobody in

14  the society, the open society, is willing to counsel those

15  folks or help those folks.  It is only through the dark

16  net, or through the internet that these folks are able to

17  try to deal with their attractions.

18       Is there some game playing, or some, you know, sort

19  of bragging or whatever that may have taken place in the

20  chat, yes; but Mr. Falte never, no proof.  Mr. Falte has

21  never offended prior to now, prior to last October.

22       So, he wants a cure.  He is amenable, and I think he

23  will get that if Your Honor were to sentence him to 30

24  years.  I think 50 years, the extra 20 is just a

25  warehouse.  I don't think in this day and age we need to

1    warehouse somebody who has potential.  Somebody who has no

2    previous criminal history, who has a college degree, who

3    has some serious skills in the internet technology.

4        So I would ask The Court to give him some hope, to

5    give him a 30 year sentence that would provide a sentence

6    that is sufficient but not greater than necessary to

7    provide appropriate punishment.

8        I would ask that Your Honor place in the designation,

9    a place in the judgment he be designated to a medical

10   facility.  I have great fear that he will be designated to

11   a lower level and then just deal with his problem if it

12   arises.  And the reason I added the information from the

13   2015 audit is that there is unconscionable delays in the

14   Bureau of Prisons just from a numbers perspective.  If his

15   mental condition deteriorates, he may well die in prison,

16   and that, maybe that accomplishes something, but I think

17   that our system, our society, should do better than that.

18   So I ask that he be placed in a facility, or recommend

19   that he be placed in a facility.  His parents were going

20   to move to Florida, but I think the recent events sort of

21   frightened them away, so I -- the hurricane --

22       THE COURT:  Done what?

23       MS GRADY:  They were going to move to Florida, so the

24   hurricane and all those events --

25       THE COURT:  Oh, those events, not these events.

1       MS GRADY:  No, no.

2       Those events have sort of scared them away from that,

3  that possibility.  So I had asked that he be housed in a

4  place closer to Florida, but his official residence under

5  the presentence report --

6       THE COURT:  Some place close to Nashville?

7       MS GRADY:  Yes, sir.  That is where -- that is where

8  his official address is in the presentence report.

9       THE COURT:  All right.  I will suggest they send him

10  to a prison with a medical facility somewhere that is in

11  driving distance of Nashville.

12      MS GRADY:  Thank you, Judge.

13      Judge, so I think the last thing I will say, Your

14  Honor, is this not about vengeance, this is about justice.

15  And sometimes justice needs to be tempered with mercy,

16  Judge.  And I ask that you sentence him to 30 years.

17      THE COURT:  All right.

18      Do you want to respond to that, Ms Aber.

19      MS ABER:  No, Your Honor.

20      THE COURT:  All right.

21      Mr. Falte, do you want to make a statement to The

22  Court?  I have read your letter.  If you would like to get

23  up and make a statement, please come up to the podium here

24  and I will be happy to hear whatever you have to say.

25      Lift up the microphone for him, will you?  Thank you.

1          THE DEFENDANT:  I just, you know, I just want to go

2     over what I said in my letter.  I do apologize.  It is --

3     when I was doing what I was doing, you know, back then, I

4     didn't see it as awful, otherwise I would have never.  The

5     last thing on earth that I would ever want to do is hurt

6     anybody.  So, I mean, I'm here today, yes I did.  You know

7     it destroys me.  So, I just want to apologize to you, to

8     the family, and the girl I hurt.  Just everybody.

9          THE COURT:  Okay?  Anything else.

10         THE DEFENDANT:  That is all, Your Honor.

11         THE COURT:  Thank you very much, Mr. Falte.

12         Let's take a brief recess was.

13                        (A recess was taken)

14         THE COURT:  Okay.

15         Well, I will now discuss the 3553(a) factors and the

16    sentence in this case.

17         First, with respect to the first factor I am to

18    consider is the nature and circumstances of the offense.

19    It is just terrible.  It is horrible.  This is a gentleman

20    who was involved in the dark web.  He was on Thor.  He was

21    involved in a web site that traded child porn.  He was

22    involved in chat rooms where they talked about how to get

23    kids to have sex with, not just kids, but infants.  He was

24    able to arrange through the internet the ability to find

25    someone who would essentially lend his daughter to him for

1  sexual purposes.  He met with -- that was with Mr. Dix in

2  northern Virginia.  He traveled from Tennessee to Virginia

3  to meet the little girl with Mr. Dix several times.  He

4  met the child.  Got her toys, got her food, ice cream, and

5  so forth.  They then went and had sex with her.  They made

6  videos of themselves having sex with the child.  Mr. Falte

7  touched her genitals.  He annually penetrated her.  He

8  masturbated and ejaculated on her.  You know, when you

9  look at kids that age they are just so trusting, and they

10  are trusting that adults will help them through life.

11  And, you know, they are not able to distinguish one adult

12  from another.  And they assume that it is always going to

13  do the right thing.  I don't know whether this little

14  girl -- I don't know what she will remember of this when

15  she gets older.  I hope it is nothing of it.  But I doubt

16  that that will be the case.

17      All right.  The characteristics of the defendant is

18  the next factor I am to consider.

19      He has, much to his credit, no criminal history.  On

20  a personal level he had a very nice upbringing with the

21  Faltes.  He had a caring family.  He had difficulties with

22  school, but much to his credit he worked his way through

23  those.  He was shy and withdrawn, and, you know, you never

24  know what is going on with somebody else.  And, obviously,

25  where do you draw the line in making a judgment about

1   somebody who is shy and withdrawn versus somebody who is

2   depressed?

3       Now, the Faltes did absolutely a very nice job with

4   getting Ding through life and out into the world doing

5   well not recognizing that there was another side to him.

6   And, you know, we all have sides we don't share with other

7   people.  And that is what we had here.

8       The next factor is the personal history.  I have

9   talked about that.  He has no dependents, no children, not

10  married.  Physically, he has got Crohn's disease, which is

11  a very bad problem, and as I said, to Ms Grady, my order

12  in this case will direct that he be placed in a facility

13  that has first-rate medical care, or the best medical care

14  that is available in the Bureau of Prisons.

15      He does have mental health issues, obviously;

16  depression, pedophilia.  You know he went through life

17  with sort of a lack of affect.  And that, I remember when

18  he came in to make the guilty plea, I noticed that about

19  him as well.

20      To his credit, he does not have a substance abuse

21  problem.  He is a college grad.  He has computer skills.

22  You know, if I had to -- he had has been steadily employed

23  if -- I had to sum him up, he obviously has some good

24  sides, but there is a horrible and thoughtless part of his

25  character that manifests itself in the conduct that is

1    unacceptable and awful.

2        The next factor is the need for the sentence to a

3    reflect the seriousness of the offense.  If he killed this

4    girl, she wouldn't live in torture the rest of her life.

5    But he didn't, and so she is the one who has a life

6    sentence in this case.

7        Respect for the law.  Well, honestly there is

8    absolutely none shown by Mr. Falte here.  He lived and

9    worked -- he lived and worked in the evil part of the web.

10   Traveled all around the country on numerous occasions, all

11   to for the purpose of victimizing this child.

12       The next factor is the need to provide just

13   punishment.  Well, the guidelines make it clear and the

14   sentencing statute makes it clear by establishing a

15   mandatory minimum that severe punishment is called for

16   here.

17       The next factor is need to afford adequate

18   deterrence.  Well, you know deterrence is an interesting

19   topic.  Its not too clear that anything that I do to

20   criminals deters other criminals from committing crimes.

21   That is certainly absolutely clear to me in drug cases and

22   violent cases, that is true.  The only cases where I think

23   there is much of a chance of general deterrence is white

24   collar crimes.  I hope that what happens to Mr. Falte

25   today is a deterrent to others who have similar urges to

1   him.  I am sure that it will be an adequate deterrence to

2   him to ever commit this again, but he is going to be out

3   of circulation for a long time.

4         The next factor is the need for the sentence to

5   protect the public from further crimes of the defendant.

6         Well, I can't -- of all of the 3553 factors, the

7   nature and circumstances of the offense and the need to

8   protect the public are clearly the most important.  It is

9   just unconscionable to put Mr. Falte in a place to do

10  anything like this again.

11        You know, the likelihood of recidivism in three to

12  five years is, I don't know, something like three to five

13  percent.  Well, you know, that means one out of every 20

14  people does something.  That is pretty dangerous.

15        The next factor is the need to give him education,

16  vocational training, medical care, and other treatment.  I

17  am going to take care of the medical care for his Crohn's,

18  and I don't think the other factors play into this very

19  much.

20        The kinds of sentences available are a maximum of

21  life, mandatory minimum of 30 years.  There are all kinds

22  of fines and assessments.  I will find that he is unable

23  to pay the $5,000 assessment for sex crimes.  And that he

24  is unable to pay a fine at all.

25        I am to take into into account the guidelines, which

1   are life.

2        To avoid sentencing disparities among similarly

3   situated defendants.  Well, anybody who gets convicted

4   under this statute is going away for a long time.

5        Restitution is obviously a factor here, and I will

6   enter an order -- I am not sure -- tell me this, Ms Aber.

7   How does it work?  I would assume that at some stage in

8   the future the child will need some sort of treatment.

9   How do I turn that into an order that Mr. Falte is

10  supposed to pay without any -- without a number?  You can

11  address it from there.  That is fine.  Or walk up here,

12  whatever you want.

13       MS ABER:  I am clearly no expert, but I believe

14  restitution would have to be a particular number

15  identified today and put in the judgment.  As of today,

16  the government consulted with the mother and grandmother.

17  They do not want to seek restitution.  They anticipate if

18  future services are needed they will obtain it through the

19  community.  That is in part based on Mr. Falte's

20  indigence.  So I don't believe restitution is needed today

21  or in the future, that is not legally possible, and the

22  government is not requesting it.

23       THE COURT:  Okay.  No restitution.

24       Okay.  All right.

25       There are two motions for variance, one by the

```
 1    government to go down to 50 years for his cooperation; and
 2    one to by the defendant to go down to 30 years.  Or 40
 3    years, depending on how you look at the case.
 4          Forty seems to be what they were arguing today at
 5    some stage.  It is 30 at others.
 6          I think the other factors in the case outweigh the
 7    motion for variance, and that motion will be denied.
 8          Mr. Falte, please stand up.
 9          Mr. Falte, pursuant to the factors set forth in 18 US
10    code section 3553(a) and the Sentencing Reform Act of
11    1984, and having considered the Federal Sentencing
12    Guidelines as advisory, it is the judgment of The Court
13    that you are hereby committed to the custody of the US
14    Bureau of Prisons to be imprisoned for a term of life.
15    This sentence is sufficient but not does not exceed the
16    amount of time necessary to achieve the goals of
17    sentencing as set forth in 18 U.S. code section 3553.  It
18    reflects the seriousness of the offense, provides just
19    punishment, affords adequate deterrence to criminal
20    conduct, and protects the public from further crimes that
21    you may commit.  I recommend that you participate in any
22    psychological programs offered by the Bureau of Prisons,
23    and that you be imprisoned somewhere near Nashville, as
24    close as possible to that.  And that you be in a facility
25    that has very, very strong medical care.
```

1           If you should ever get out of imprisonment you will

2    be placed on supervised release for a term of life.  And

3    if you get out of prison you have to report to the Bureau

4    of Prisons.  If can't commit federal, state, or local

5    crimes, possess a controlled substance, or possess a

6    firearm or destructive device.  You will comply with the

7    standard conditions of supervised release.  You will

8    participate in any psychological programs deemed necessary

9    by the probation office with cost to be paid by the

10   government.

11          You will not be put on a plethysmograph, which seems

12   barbaric to me.  I have considered your net worth and

13   liquid assets, your life style and financial needs, your

14   earning potential and the dependents relying on your

15   support.  You are not capable of paying a fine.  No fine

16   will be imposed.  You have to pay a special assessment in

17   the amount of a hundred dollars, which is due immediately.

18          Was there a forfeiture?

19          MS ABER:  Not here, Your Honor.

20          THE COURT:  Okay.

21          Mr. Falte, you have 14 days to appeal this sentence

22   to the U.S. Court of Appeals for the Fourth Circuit.  You

23   do that by filing a notice of appeal, which Ms Grady will

24   do if you ask her to do it.  You don't have to pay a fee.

25   You can do it for free, and they will appoint a lawyer to

1      handle your appeal.  If you can't ahold of Ms Grady, send

2      a letter to the clerk of this court saying you want to

3      appeal.

4           Mr. Falte, this is -- I have wrestled with this case

5      since the first day I met you.  And it just makes me sick.

6      The whole thing is sad for everybody involved, for you,

7      your parents, for the victims, for the lawyers.

8           I don't know what your life is going to be like going

9      forward from here.  You going to find the ability to put

10     one step in front of the other as you go through the rest

11     of your life.  You are going to be in prison and going to

12     be there with a lot of people who don't have the

13     intelligence and education and skills that you have.

14          And I hope that you will find it within yourself at

15     some stage to try to help those people to move on, to help

16     them find meaning to their lives so that they can at the

17     end of their sentences move on to a better life.  I hope

18     you can find a way to be a servant to others while you are

19     in prison.

20          I have arranged with the Marshals for you to be able

21     to have a few moments to talk with your parents here in

22     the courtroom before you leave.

23          God bless you.

24          Let's recess court.

25                         HEARING ADJOURNED

 1          THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT.

 2

 3                  GILBERT FRANK HALASZ, RMR

 4                   OFFICIAL COURT REPORTER

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25